FILED'10 JUN 02 14:34USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**MINDY M. EDGAR,**

                    Plaintiff,

        v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security

                 Defendant.

Civil No. 08-6379-AC

**FINDINGS AND
RECOMMENDATION**

ACOSTA, Magistrate Judge:

       Plaintiff Mindy Edgar ("Edgar") seeks judicial review of the Social Security Commissioner's

final decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This court has

jurisdiction under 42 U.S.C. § 405(g).

1 - FINDINGS AND RECOMMENDATION

For the reasons below the Commissioner's decision should be REVERSED and REMANDED for the immediate calculation and award of benefits.

## BACKGROUND

Born in 1968 (Tr. 79[1]), Edgar completed high school.  Tr. 124.  Edgar reports work as a waitress between 1990 and 2006.  Tr. 120.

Edgar applied for DIB and SSI on June 13, 2006, alleging disability since January 1, 2004 (Tr. 79-81, 84-86), due to bipolar disorder, neck, and back pain.  Tr. 119.  The Commissioner denied her applications initially and upon reconsideration (Tr. 46-55), and an Administrative Law Judge ("ALJ") held a hearing on July 16, 2008.  Tr. 23-41.  On August 27, 2008, the ALJ found Edgar not disabled.  Tr. 11-22.  The Appeals Council denied review of the matter, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.  Edgar presently appeals.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act.  20 C.F.R. §§ 404.1520; 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  Edgar challenges the ALJ's evaluation of her credibility and the medical evidence between steps three and four, and the ALJ's finding that she is not disabled at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity.  If she is, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  At step two,

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer May 26, 2009 (Docket #15).

2 - FINDINGS AND RECOMMENDATION

the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If she determines the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden of production shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into

3 - FINDINGS AND RECOMMENDATION

consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566; 404.1520(g); 416.966; 416.920(g).

## THE ALJ'S FINDINGS

The ALJ found that Edgar had not performed substantial gainful activity at step one, and found Edgar's bipolar disorder, borderline IQ, and cognitive disorders "severe" at step two. Tr. 13. The ALJ found that Edgar's impairments did not meet a listed disorder at step three, and assessed Edgar's RFC:

> The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no complex or detailed instructions; needs set routine tasks to avoid problem with learning new material and to reduce job stress; and only occasional or superficial contact with the general public and co-workers. Tr. 14.

The ALJ found that Edgar could not perform any past relevant work, but could perform work existing in the national economy at step five. Tr. 20. The ALJ therefore found Edgar not disabled at any time through the date of her decision. Tr. 21-22.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson* v. *Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept

4 - FINDINGS AND RECOMMENDATION

as adequate to support a conclusion." *Id.*

The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins v. Soc. Sec. Admin,* 466 F.3d 880, 882 (9th Cir. 2005); *Edlund v. Massinari,* 253 F.3d 1152, 1156 (9th Cir. 2001). Thus, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld, even where the evidence can support either affirming or reversing the ALJ's conclusion. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews,* 53 F.3d at 1039.

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia,* medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883, *citing* SSR 96-8p at *5 (available at 1996 WL 374184); 20 C.F.R. § 404.1545(a)(3); *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996). However, the reviewing court must consider the entire record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007).

## **DISCUSSION**

Edgar challenges the ALJ's credibility findings, review of the medical record, and assessment of the lay testimony. Edgar consequently challenges the ALJ's finding that she was not disabled at step five in the sequential proceedings.

## I.    **Credibility**

The ALJ found Edgar not credible due to her non-compliance with prescribed treatment and

5 - FINDINGS AND RECOMMENDATION

alleged inconsistencies in her testimony. The ALJ also found Edgar not credible due to alleged

secondary gain. Tr. 15, 17-18.

### A.    Standards: Credibility

The ALJ performs a two-step analysis in her credibility finding. First, the ALJ determines

if the claimant has shown an underlying impairment which may "reasonably be expected to produce

pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (citing *Smolen*, 80 F.3d at 1273).

If the claimant establishes such an impairment, and there is no finding of malingering, the ALJ

proceeds to the second step, where she must provide "clear and convincing" reasons for finding a

claimant not credible. *Id.*

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court

to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*,

50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)

(en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history,

as well as the claimant's daily activities, work record, and observations of physicians and third

parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284.

The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing

inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an

underlying impairment, the ALJ may not, however, make a negative credibility finding "solely

because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical

evidence." *Robbins*, 466 F.3d at 883.

///

///

6 - FINDINGS AND RECOMMENDATION

B.    **Analysis**

a.    **Non-Compliance with Treatment**

The ALJ first found Edgar not credible because she allegedly did not comply with her psychotropic medication regime, stating that Edgar was "not a reliable source on this subject." Tr. 15. Here the ALJ discussed treating physician Dr. Sinnott's records. *Id.* The ALJ concluded that Edgar was non-compliant until an unspecified date. *Id.*

The ALJ may cite a claimant's failure to follow recommended treatment in finding her not credible. *Smolen,* 80 F.3d at 1284. However, the Ninth Circuit explicitly notes that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blakenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989)).

The record shows that Edgar struggled to accept taking psychotrophic medications between April 2002 and February 2006. The record shows that Edgar had difficulty understanding medication protocol and instructions. Treating physicians Drs. Sinnott and McClave repeatedly counseled Edgar on the importance of taking her medication continuously and consistently, and repeatedly endeavored to help Edgar understand the importance of compliance. Tr. 230, 250, 252, 296, 302, 305, 378, 405. In April 2002, Dr. Sinnott specifically counseled Edgar regarding the importance of consistency in taking her lithium. Tr. 405. In April 2005, Edgar again ceased taking her lithium and Sequerol. Tr. 243. Edgar was without medication on June 14, 2005. Tr. 268. Dr. Sinnott's notes show that Edgar was compliant with her psychotrophic medication in February and July 2006. Tr. 230, 236, 240, 246.

The record also shows that Edgar ceased taking Lithium in June 2002 because she lost her

7 - FINDINGS AND RECOMMENDATION

health insurance. Tr. 403. The ALJ may not penalize a claimant for failing to obtain treatment she cannot afford. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

For these reasons, the ALJ's finding that Edgar's noncompliance with her psychotropic medication undermines her credibility is inappropriate. This finding should not be sustained.

**b.    Alleged Inconsistencies**

The ALJ also found Edgar not credible due to alleged inconsistencies in her testimony. Tr. 17. Here, the ALJ specifically cited Edgar's April 2006 request for a physician statement affirming her parenting abilities, and Edgar's July 16, 2008, hearing testimony that she believe herself to be a poor parent. *Id.* The ALJ may find a claimant not credible based upon a claimant's inconsistent statements regarding her symptoms. *Smolen*, 80 F.3d at 1284. This court does not find that Edgar's statements regarding her perceptions of her parenting ability establish a genuine misrepresentation of material fact. The court here again notes Edgar's borderline IQ. This finding therefore should not be sustained.

**c.    Alleged Secondary Gain**

The ALJ found that Edgar's benefit application was motivated by secondary gain. Here the ALJ cited Edgar's applications for general assistance and HUD benefits, as well as correspondence with her treating physician regarding how many hours he would authorize her to work. Tr. 17. The record shows that Edgar left phone messages at Dr. Sinnott's office regarding work releases (Tr. 229, 332, 238, 244, 254, 256, 304), and that on June 12, 2006, Dr. Sinnott wrote that he believed twenty hours of work per week "is about all that she can handle at this point." Tr. 236.

The ALJ may not chastise a claimant for seeking disability benefits payments; such reasoning circumvents the very purpose of disability benefit applications. *Ratto v. Chater*, 839 F.Supp. 1415,

8 - FINDINGS AND RECOMMENDATION

1428-29 (D. Or. 1993). The ALJ's reasoning that Edgar is not credible because she sought public assistance and medical documentation related to her alleged disability is inconsistent with this standard. This finding therefore should not be sustained.

### C.    Conclusion: Credibility

In summary, the ALJ's reasoning regarding Edgar's credibility is not based upon the appropriate legal standards. The ALJ failed to provide sustainable reasons for finding Edgar not credible. The court also notes that the ALJ's reasoning is internally inconsistent. The ALJ found Edgar not credible due to her non-compliance with treatment (Tr. 14-20), but also found that Edgar's compliance with treatment rendered her not disabled. Tr. 15. For all of these reasons the ALJ's credibility determination should not be sustained.

## II.    Medical Source Statements

Edgar challenges the ALJ's evaluation of the opinions of treating physician Dr. Sinnott and examining psychologist Dr. Wahl.

### A.    Standards

The ALJ must generally accord greater weight to a treating physician's opinion than an examining physician's opinion and, in turn, accord greater weight to an examining physician's opinion than to a reviewing physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a controverted opinion from a treating or examining physician. *Id.* If the opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons. *Id.*

### B.    Analysis

No physician of record contradicted the opinions of Drs. Sinnott and Wahl. The ALJ was

9 - FINDINGS AND RECOMMENDATION

therefore obligated to give "clear and convincing" reasons for rejecting their opinions.

### a.    Treating Physician Dr. Sinnott

General practitioner Dr. Sinnott treated Edgar between March 2000 (Tr. 420) and March 2008 (Tr. 422), when the record closes. Dr. Sinnott saw Edgar approximately once per month for much of this period. Dr. Sinnott first assessed a mood disturbance on March 20, 2000 (Tr. 420), and continued to assess a mood disorder and provide primary care throughout this period. During this time Dr. Sinnott revised his diagnosis to include depression and bipolar disorder.

Dr. Sinnott periodically addressed Edgar's reluctance to take psychotropic medication. Dr. Sinnott first noted Edgar's resistance to taking Lithium as prescribed on July 28, 2004. Tr. 296. Dr. Sinnott assessed bipolar disorder on June 14, 2005, and noted that Edgar was presently not treated. Tr. 268. On December 1, 2005, Dr. Sinnott noted that he counseled Edgar regarding the importance of taking her psychotropic medication consistently. Tr. 252. A December 14, 2005, chart note shows that Edgar was not taking her medication. Tr. 250. However, Dr. Sinnott's notes also show that Edgar was compliant with her medication regime on February 20, 2006. Tr. 246. Finally, Dr. Sinnott noted that Edgar was taking her medication properly on June 12, 2006. Tr. 236.

On July 23, 2008, Dr. Sinnott wrote a letter to Edgar's attorney stating that Edgar has been under his care since approximately September 1999, and that he sees her approximately six times per year, and "occasionally more frequently during periods of crisis." Tr. 431. Dr. Sinnott wrote that Edgar's current diagnoses are "bipolar disorder, borderline personality [disorder], mild organic mental retardation with an IQ of 81," and impulse and anger control disorders. *Id.* Dr. Sinnott also wrote that Edgar currently receives treatment with Seroquel, lithium, Klonopin, and a sleeping aide.

10 - FINDINGS AND RECOMMENDATION

*Id.*

Dr. Sinnott explained how Edgar's illnesses affect her behavior:

> Because of the bipolar disorder, depression and anxiety, and poor
> impulse control, the symptoms she experiences at times are quite [sic]
> emotional lability, sudden onset of anger, which often manifests itself
> with cursing, irrational behavior, yelling, screaming, etc. These
> behaviors can come all of a sudden and for what might to other
> people, be situations that would not provoke that type of response.
> With the anxiety and stress she also experiences headaches, difficulty
> sleeping, fatigue during the daytime, and extreme difficulty in
> relationships.

Tr. 432. Dr. Sinnott continued that Edgar's symptoms "can be somewhat reduced with medication

but they have never been completely resolved." *Id.* He also stated that Edgar has "repeated episodes

of decompensation, sometimes for weeks at a time, sometimes for days at a time," and these episodes

come on "suddenly and almost uncontrollably for her." *Id.* Finally, Dr. Sinnott concluded that he

did not believe Edgar could tolerate the demands of any work environment, and that he expected she

would miss at least two days per week due to psychological symptoms.

The ALJ reiterated Dr. Sinnott's chart notes and conclusions at considerable length. Tr. 15-

19. However, the ALJ made no identifiable conclusion regarding Dr. Sinnott's opinion, and did not

specify why she rejected his opinion. Following citation to Dr. Sinnott's opinion that Edgar cannot

sustain work activity, and in particular that she has difficulty with the public and co-workers, the

ALJ wrote that Edgar's RFC "indicates that once the claimant becomes compliant with her

psychotropic medications there was no basis to eliminate all such contact." Tr. 16. The ALJ gave

no explanation for this conclusion. The ALJ made no other pointed rejection of Dr. Sinnott's

opinion, other than to note that his records indicate "significant decrease in complaints related to her

11 - FINDINGS AND RECOMMENDATION

mental symptoms" after Edgar began complying with her psychotropic medication treatment. Tr. 18.

The ALJ's finding fails to provide clear and convincing reasons for rejecting Dr. Sinnott's opinion. The ALJ does not correlate her rejection of Dr. Sinnott's opinion to any instance in the record. Furthermore, the ALJ's reliance upon Edgar's noncompliance with treatment is misplaced for the reasons explained above. For these reasons, the ALJ's rejection of Dr. Sinnott's opinion should not be sustained.

### b.    Examining Psychologist Dr. Wahl

Examining psychologist Dr. Wahl evaluated Edgar for Coos County Adult and Family Services ("AFS") on October 27, 2000. Tr. 397-401. Dr. Wahl performed a clinical evaluation and mental status testing, including intelligence and personality tests. Tr. 397. Dr. Wahl noted that Edgar produced a valid Minnesota Multi-phasic Personality Inventory ("MMPI") profile, which showed low self-esteem and a realization that she requires psychological intervention. Tr. 400. Dr. Wahl did not note malingering. Dr. Wahl diagnosed a cognitive disorder, adjustment disorder with disturbance of conduct, and a GAF of 60. Tr. 401. Dr. Wahl also noted that Edgar's full-scale IQ was "just 81," and that clinical testing strongly suggested that Edgar has a "right-hemispheric organic impairment." *Id.*

The ALJ noted Dr. Wahl's findings. Tr. 17-18. The ALJ first rejected them because Edgar's IQ test results "did not affect her overall concentration and attention abilities; she was able to sit for a three and one-half hour evaluation without exhibiting anger outbursts or lack of impulse control." Tr. 17. The ALJ subsequently found that, contrary to Dr. Sinnott's opinion, Edgar's difficulties with

12 - FINDINGS AND RECOMMENDATION

anger and impulse control did not stem from her low IQ test results. *Id.*

This reasoning does not supply a specific, clear, or convincing reason for rejecting Dr. Wahl's opinion. Edgar does not contend that she is disabled because she cannot concentrate for three and one-half hours; she contends that she is disabled due to the cumulative effect of her bipolar, anger, and impulse control disorders. Tr. 119; Pl.'s Opening Br. 1. Further, the ALJ gave no reason for rejecting Edgar's IQ testing results.

Finally, the ALJ rejected Dr. Wahl's opinion because the "overall record" shows that Edgar's "diagnosis of bipolar disorder is significantly better controlled when she has been compliant with her overall prescribed psychotropic medications . . . ." Tr. 17. This reasoning does not adequately reject Dr. Wahl's opinion regarding Edgar's diagnosis or IQ test results.

For all of these reasons, the ALJ's assessment of Dr. Wahl's opinion fails to apply appropriate legal standards.

### C.    Conclusion: Medical Source Statements

The ALJ failed to give clear and convincing reasons for rejecting the opinions of Drs. Sinnott and Wahl. These findings should not be sustained, and the effect of the ALJ's error is discussed below.

### III.    Lay Witness Testimony

Edgar asserts that the ALJ improperly evaluated testimony submitted by her former husband, Glen Meador, and former employer, Mike Pizzola.

### A.    Standards

The ALJ has a duty to consider lay witness testimony.    20 C.F.R. §§ 404.1513(d),

13 - FINDINGS AND RECOMMENDATION

404.1545(a)(3); 416.913(d), 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Friends and family members in a position to observe the claimant's symptoms and daily activities

are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19

(9th Cir. 1993). The ALJ may not reject such testimony without comment, and he must give reasons

germane to the witness for rejecting her testimony. *Nguyen*, 100 F.3d at 1467. However,

inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512.

The reviewing court may not find an ALJ's omission of lay testimony harmless unless it can

confidently conclude that no reasonable ALJ, when fully crediting the improperly omitted testimony,

would reach a different disability determination. *Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir.

2006).

**B.    Analysis**

**a.    Glen Meador's Testimony**

Edgar's former husband, Glen Meador, submitted a third party report to the record (Tr. 137-

44), and also submitted an undated letter to the record. Tr. 174-75. Meador wrote that Edgar

requires help taking her medication because she "*thinks* she *doesn't need* them when she feels o.k.*"

Tr. 139 (emphasis original). Meador also wrote that Edgar has been "somewhat better" since taking

her medication, but "only sometimes." Tr. 141. He also stated that "one minute she's normal. The

next she thinks everyone is out to get her - or pick on her" and that Edgar is "on medication but she

still flies off the handle at anyone - then thirty minutes later she's apologetic." Tr. 142. Finally,

Meador endorsed that Edgar has difficulty with memory, completing tasks, concentration,

understanding, following instructions, and getting along with others. *Id.*

14 - FINDINGS AND RECOMMENDATION

The ALJ noted Meador's testimony and concluded:

> [T]here is no doubt that Mr. Meador is speaking from his personal experiences and observations of the claimant, but the probative value in terms of her mental impairments and symptoms and functional limitations therefrom is minimal. The undersigned has considered all of Mr. Meador's third-party statements in the evidence of the record before arriving at the residual functional capacity set forth above.

Tr. 20.

This analysis entirely fails to consider the appropriate legal standards for evaluating lay testimony. The ALJ gives no germane reasons for rejecting Meador's statement, and fails to acknowledge that lay testimony is probative *because* it describes a claimant's limitations. *Dodrill*, 12 F.3d at 918-19. This analysis should not be sustained.

### b.    Mike Pizzola's Testimony

Edgar's former employer, Mike Pizzola, submitted a letter to the record on June 10, 2008. Tr. 173. Pizzola wrote that he employed Edgar to perform office work beginning January 1, 2006, and that Edgar exhibited inappropriate workplace behavior beginning on or about April 20, 2006. *Id.* Pizzola explained that Edgar would "get very upset and scream, yell, [throw] stuff and get absolutely out of control over nothing." *Id.* Pizzola also stated that this behavior happened "often." *Id.* Pizzola finally stated that Edgar would "freak out at me and had no control about any thing." *Id.*

The ALJ noted this testimony and concluded, "the timeframe that this letter and Mr. Pizzola deal with is prior to when the claimant began complying with her psychotropic medication treatment and thus is not an accurate picture of the claimant's functional abilities when she is being compliant." Tr. 20. The ALJ stated that "accordingly, this letter is not given significant weight."

15 - FINDINGS AND RECOMMENDATION

*Id.*

As discussed above, the ALJ improperly cited Edgar's noncompliance with her psychotropic medication. Therefore, the ALJ failed to provide a reason germane to Pizzola for rejecting his testimony. This analysis should not be sustained.

In summary, the ALJ failed to evaluate the lay testimony under the correct legal standards. The effects of the ALJ's error are discussed below.

## IV.    The ALJ's Step Five Findings

Edgar finally asserts, without explanation, that the vocational expert's testimony does not meet the Commissioner's burden to show that Edgar can perform work in the national economy at step five in the sequential proceedings. Pl.'s Opening Br. 20.

At step five, the ALJ may draw upon a vocational expert's testimony to show that claimant can perform work in the national economy. *Tackett*, 180 F.3d at 1101. The ALJ's questions to the vocational expert must include all properly supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). Here, the ALJ propounded hypothetical questions to the vocational expert based upon an RFC assessment which did not properly consider Edgar's testimony, the medical evidence, and the lay witness testimony. Tr. 38. The vocational expert's testimony is therefore without probative value. The ALJ's step five finding should not be sustained.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings.

16 - FINDINGS AND RECOMMENDATION

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where: "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman,* 211 F.3d at 1178 (quoting *Smolen,* 80 F.3d at 1292). In such circumstances the reviewing court must credit the improperly rejected evidence. *Vasquez v. Astrue,* 547 F.3d 1101, 1106-07 (9th Cir. 2008) (*en banc review denied,* 572 F.3d 586 (9th Cir. 2009)). It is axiomatic, however, that the reviewing court may not credit testimony and subsequently award benefits contrary to the Act. *See Vasquez,* 572 F.3d at 589 (O'Scannlain J., dissenting).

The ALJ failed to provide legally sufficient reasons for rejecting Edgar's testimony. Edgar testified at her July 16, 2008, hearing that she still experiences rages while on medication (Tr. 31), and that she was fired from a work attempt because she "blew up" at a customer. Tr. 35. Dr. Wahl stated that Edgar has a borderline IQ and a cognitive disorder (Tr. 401), and Dr. Sinnott opined that Edgar is unable to perform work activity due to symptoms stemming from her bipolar, anger, and impulse control disorders. Tr. 431-32. Dr. Sinnot stated that medication reduces, but does not resolve, her symptoms, and that she continues to experience episodes of decompensation. Tr. 432. Finally, both lay witnesses indicated that Edgar cannot function in a work environment. Tr. 142, 173. These statements all point towards a finding of disability. In such circumstances, the improperly rejected evidence should be credited. *Hammock v. Bowen,* 879 F.2d 498, 503-04 (9th Cir. 1989) (crediting as true erroneously rejected claimant testimony and physician opinions where

17 - FINDINGS AND RECOMMENDATION

treating physicians's opinions supported claimant's testimony). The court therefore credits this evidence and now discusses the effect of the credited testimony and medical opinions under the second and third prongs of the *Harman* analysis.

In determining whether to award benefits or remand the matter for further proceedings the court must determine whether "outstanding issues remain in the record" under the second *Harman* prong. *Harman*, 211 F.3d at 1178. Neither party asserts that the record is insufficient. The court finds the record sufficiently developed.

Therefore the court must finally determine whether the record clearly requires an award of benefits after the improperly rejected evidence is credited. *Harman*, 211 F.3d at 1178. The vocational expert testified that a claimant unable to respond appropriately to "minimal" workplace changes, and who displayed anger or rage in response to workplace criticism, would be precluded from performing work in the national economy. Tr. 39-40. This testimony establishes that Edgar may not perform work in the national economy at step five in the sequential proceedings. Consequently, Edgar is disabled under the Commissioner's regulations.

## CONCLUSION AND RECOMMENDATION

The ALJ's decision is not based upon the appropriate legal standards or substantial evidence. Crediting the improperly omitted testimony establishes that Young is disabled under Titles II and XVI of the Act. The ALJ's decision should therefore be reversed and remanded for the immediate calculation and award of benefits.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any,

18 - FINDINGS AND RECOMMENDATION

are due June 16, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 1st day of June, 2010.

John V. Acosta
United States Magistrate Judge

19 - FINDINGS AND RECOMMENDATION